March 6, 1961.

Record No. 5182.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Henry J. Lankford,* for the plaintiff in error.

*William P. Oberndorfer (Charles L. Kaufman; Hamilton Plack; Ira B. Hall,* on brief), for the defendant in error.

Sɴᴇᴀᴅ, J., delivered the opinion of the court.

William J. Story, Jr., who was Superintendent of Schools of the City of South Norfolk and a member of the State Board of Education, instituted an action for libel against Norfolk-Portsmouth Newspapers, Inc. The motion for judgment contained two counts, one of libel at common law and the other of insulting words under the statute (§ 8-630). After filing its answer and grounds of defense, defendant filed a motion for summary judgment. Later plaintiff filed a motion to strike certain exhibits attached to defendant's answer and portions of the answer itself and moved for a pre-trial conference to consider and pass upon his motion to strike and defendant's motion for summary judgment. At the conference, according to the stipulation filed, counsel for plaintiff "admitted that there was no actual or express malice or malice in fact on the part of defendant." Defendant's motion for summary judgment was sustained and judgment was rendered for defendant. We granted plaintiff a writ of error.

The dominant issue presented by plaintiff's assignments of error is whether the court erred in entering summary judgment.

The alleged libelous words were contained in a letter addressed to the Editor of the Virginian-Pilot. It was captioned "ABOUT WRIGHT SCHOOL" and signed "A SOUTH NORFOLK CITIZEN." The entire letter was printed in a section of the newspaper called "Letters to the Editor" on April 17, 1959, and the newspaper was sold and distributed in the usual routine. The letter reads in part:

"The recent decision of Mr. William J. Story and the South Norfolk School Board to vacate Rena B. Wright Elementary School leaves many questions unanswered. If this decision was reached after a thorough investigation and study by Mr. Story and the school board, why was the above school completely rewired during the last Christmas holidays? If it is their intention to abandon this school, declare these buildings excess school property, and make them available for purchase by a private school concern, how can we as citizens protect our public school property from unscrupulous leaders?

\*      \*      \*      \*      \*      \*      \*

"If Mr. Story would direct more of his energies toward the attainment of new elementary school buildings, and devote more time and attention to his position as superintendent of schools, many parents would be most grateful. We are tired of his continuous crusading, and *having our children suffer* from his hastily conceived and impulsive recommendations and decisions." (Italics supplied.)

Plaintiff complains of the words "unscrupulous" and "having our children suffer" and contends they are libelous *per se*. Defendant argues that the official actions of plaintiff as Superintendent of Schools could be made the subject of fair comment and criticism; that the letter reasonably construed did not go beyond criticism of his actions with respect to school matters; that it is highly questionable whether it can be fairly said that the word "unscrupulous" referred to plaintiff since under § 22-161.1, Code 1950, as amended, it was the School Board which possessed the power to dispose of school property; that "having our children suffer" when read in context of the entire sentence is clearly within the realm of permissible comment respecting a public official; that the letter was not libelous *per se*, and that even if it be considered libelous *per se* no action lies because its publication was qualifiedly privileged.

There are two kinds of privileged communications, those absolutely privileged and those qualifiedly privileged. Cases in which absolute privilege apply are not numerous and they may be divided into three classes, namely: Proceedings of legislative bodies; judicial proceedings; and communications by military and naval officers. Newell, *Slander and Libel*, 4th Ed., § 351, p. 388.

"The great underlying principle upon which the doctrine of privileged communications rests is public policy. * * *. Qualified privilege exists in a much larger number of cases. It extends to all communications made bona fide upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation. The occasion on which the communication was made rebuts the inference of malice prima facie arising from a statement prejudicial to the character of the plaintiff, and puts upon him the burden of proving that there was malice. In short, that the defendant was actuated by motives of personal spite or ill-will, independent of the occasion on which the communication was made." Newell, *Slander and Libel*, 4th Ed., § 341, p. 380.

Generally defamatory publications *prima facie* imply malice in the author, and proof of malice is not required of the complaining party beyond proof of the publication itself. But privileged communications are an exception to the rule, and if a communication is one of qualified privilege the onus is cast upon the person claiming to have

been defamed to prove the existence of malice. Where such proof is offered, it is a question for the jury to decide. But if plaintiff offers no evidence or insufficient evidence to prove actual malice on the part of defendant his action must fail. Newell, *Slander and Libel*, 4th Ed., §§ 342, p. 381; 280, p. 316; 395, p. 419. See also 26 A. L. R. p. 852.

In *James* v. *Haymes*, 163 Va. 873, 885, 178 S. E. 18, it was said:

" 'When a person is in a public capacity he may be criticized by the newspapers in the public interest; and that rebuts the presumption of malice in law which the court might otherwise make, and leaves malice in fact to be proved, and malice in fact to be found, either in the special language of the article or in circumstances proved which point to some motive of enmity to the particular individual.' *John Long & Co.* v. *Langlands*, 114 L. T. N. S. (Eng.) 665."

It is the court's duty to decide as a matter of law whether the occasion is privileged. *Alexandria Gazette Corp.* v. *West*, 198 Va. 154, 160, 93 S. E. 2d 274. If strong or violent language disproportionate to the occasion is used, an inference of malice arises and the privilege that otherwise would attach is lost. On privileged occasions there is a tendency of the courts not to subject the words to a very strict scrutiny, but to consider them in the light of facts as they appear to the author. It is not a question of whether the imputations are true, but whether the words are such as the author might have honestly used under the circumstances. *Strode* v. *Clement*, 90 Va. 553, 559, 19 S. E. 177; *Federal Land Bank* v. *Birchfield*, 173 Va. 200, 222, 3 S. E. 2d 405.

Plaintiff concedes the occasion was one of qualified privilege, but insists that such privilege was lost by exceeding the scope of it in the publication of the words complained of, and that malice in law is implied which is sufficient to support a recovery.

As has been stated, since the occasion was one of qualified privilege the burden was cast upon plaintiff to prove malice in fact. In such cases proof might be accomplished by the language itself if it is capable of affording evidence of express malice, or by extrinsic evidence. The inference of such malice which may arise from the use of violent and disproportionate language is evidentiary and rebuttable.

Here we are confronted with a stipulation in which plaintiff admits "there was no actual or express malice or malice in fact" on defendant's part. Malice is an essential and ultimate fact to be proven and it cannot be implied where it has been stipulated there was none.

Nonexistence of the ultimate fact having been admitted plaintiff was barred from a recovery.

*Federal Land Bank* v. *Birchfield, supra,* is analogous to the present case. The bank adopted a "new allowance plan" for servicing loans. Under it each farm loan association accepting the plan was required to elect a secretary-treasurer approved by the bank. Plaintiff was such an officer of Smyth County National Farm Loan Association, and he was among those not acceptable to the bank. He had also represented the bank as loan correspondent and as attorney. A representative of the bank consulted a local attorney and advised him that if the new plan was adopted "the bank is getting rid of Birchfield—is letting him go." At a meeting of the directors of the association which plaintiff attended, Held, an assistant secretary of the bank, referring to certain affidavits plaintiff had obtained to show his qualifications to retain his office, stated: "These affidavits which Birchfield has taken will have to be taken out of Washington, the bank will not accept these affidavits. These affidavits are not genuine—the bank does not want to prosecute Birchfield." Plaintiff instituted action based on defamatory statements and a judgment was rendered on the jury verdict of $1,500 for plaintiff.

On appeal this court reversed the judgment and entered final judgment for defendant. With regard to the statement made to the local attorney, we held the communication was privileged and was not abused. We also held that the statement made to the directors of the association was a privileged communication, uttered by an agent of the bank on a privileged occasion, and that plaintiff was only entitled to recover if the words spoken were actuated by malice. Letters exchanged between plaintiff and Held showed their relationship was friendly even after the alleged defamatory words were uttered. Plaintiff testified: "Held has been very friendly to me * * *. I don't think Mr. Held ever had any malice toward me." In holding that the words were not spoken with malice, we said:

"Plaintiff, by his own evidence, including his testimony and letters, has conclusively, as to himself, established the fact that the words upon which he bases this action were not spoken with malice. Ordinarily, the weight to be given the testimony of any witness is for the jury. This is not true, however, as to the testimony which he [a litigant] gives himself. No litigant can successfuly ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him. He cannot

be heard to ask that his case be made stronger than he makes it, where, as here, it depends upon facts within his own knowledge and as to which he has testified.' *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652, 656." 173 Va. p. 225.

There we quoted with approval from *Chalkley* v. *A. C. L. R. Co.*, 150 Va. 301, 306, 143 S. E. 631, wherein it was said:

" 'Generally, of course, malice is a question of fact to be submitted to a jury, but where the communication is privileged, unless there is evidence from which a jury may fairly conclude that there was malice, there can be no recovery.' " 173 Va. pp. 222, 223.

In the case at bar, plaintiff having stipulated "there was no actual or express malice or malice in fact" on the part of defendant, a jury could not find there was malice. There was no material fact genuinely in dispute and the court properly entered summary judgment for defendant under Rule 3:20 of Rules of Court.

The judgment appealed from is affirmed.

*Affirmed.*