FOURTH DIVISION

August 4, 2005   

No. 1-04-3472

PATRICIA KRUEGER, )    Appeal from

) the Circuit Court

Plaintiff-Appellant, ) of Cook County.  

)

v. ) No. 03 L 10651

)

MARY ANN LEWIS, )     Honorable

) Kathy M. Flanagan, 

Defendant-Appellee. )  Judge Presiding.

JUSTICE THEIS delivered the opinion of the court: 

Plaintiff Patricia Krueger appeals from an order of the circuit court granting defendant Mary Ann Lewis’ motion to dismiss plaintiff’s complaint for defamation
 under section 2-619 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-619 (West 2000)).  Plaintiff argues that the trial court erred (1) in relying on an uncertified transcript of the Village of Lyons Board Meeting submitted by defendant in support of her motion to dismiss; and (2) in granting defendant’s motion to dismiss after finding that defendant’s statements at the meeting were absolutely privileged.  We affirm.  

The complaint, filed on August 3, 2001, alleges the following facts.  Plaintiff held the position of Village Trustee of the Village of Lyons since April 20, 1999, and was a person of good reputation in her community.  On June 19, 2001, defendant, “maliciously intending to injure [p]laintiff in her good name and reputation,” published at a televised Village of Lyons Board Meeting in the presence of an “audience crowded with Lyons citizens and voters, a false and defamatory charge concerning [p]laintiff.”  Defendant charged that plaintiff, “in her capacity as a Village Trustee, * * * had accepted a bribe to establish a [tax increment financing] district in the Village of Lyons, and that [p]laintiff was pocketing money from developers in exchange for [p]laintiff’s cooperation.”  Plaintiff requested that defendant repeat her statement and defendant did so.  Defendant made the statement “in full knowledge that [it was] untrue or in reckless disregard of [its] truth or falsity, and for the purpose of injuring plaintiff in her good name and business.”  Plaintiff further alleged that the statement imputed an inability to perform or want of integrity in the discharge of plaintiff’s duties of office and imputed the commission of bribery, a criminal offense, constituting slander 
per se
.  Plaintiff alleged that as a result of this publication, she had been held “in public hatred, contempt, and ridicule, and [was] injured in her good name and reputation.”  She further alleged that “[a]t the time of the publication of her statement, the [d]efendant had made no reasonable effort to inquire as to the truthfulness of her claim that [p]laintiff accepted bribes.”  Plaintiff sought $50,000 in compensatory damages and $250,000 in punitive damages.   

Defendant then filed a motion to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615) (West 2000)), arguing, 
inter alia
, that her statement was absolutely privileged.  The trial court granted the motion to dismiss, finding the statement absolutely privileged because it was made at a legislative proceeding.

Plaintiff then appealed to this court.  In 
Krueger v. Lewis
, 342 Ill. App. 3d 467, 794 N.E.2d 970 (2003), we reversed.  We first found that plaintiff had sufficiently pled the elements of slander 
per se
 despite the fact that defendant’s alleged defamatory statement was not placed in quotation marks in the complaint.  
Krueger
, 342 Ill. App. 3d at 470-72, 794 N.E.2d at 972-74.  We then addressed defendant’s argument that her statement was absolutely privileged because she was a private citizen making the statement at a legislative hearing.  This court discussed the application of an absolute privilege to legislative proceedings and adopted the absolute privilege as provided in section 590A of the Restatement (Second) of Torts (Restatement).  
Krueger
, 342 Ill. App. 3d at 474-75, 794 N.E.2d at 976; Restatement (Second) of Torts §590A (1977).  In attempting to apply that privilege, this court determined that the complaint did not reveal the existence of an absolute privilege where it did not state the nature of the meeting, the business being conducted that day, whether defendant’s comment had any relation to the meeting or whether defendant was a witness at that meeting.  Accordingly, this court reversed the trial court’s order granting defendant’s section 2-615 motion to dismiss and remanded this case to the trial court.  
Krueger
, 342 Ill. App. 3d at 475, 794 N.E.2d at 976.  The Illinois Supreme Court denied defendant’s petition for leave to appeal on December 3, 2003.  
Krueger v. Lewis
, 206 Ill. 2d 623, 806 N.E.2d 1066 (2003).  

On remand, defendant filed a motion to dismiss under section 2-619(a)(9) of the Code, arguing that defendant’s statement was absolutely privileged.  Defendant attached a transcript of the June 19, 2001 Village of Lyons Board Meeting transcribed from a videotape of the televised meeting, an agenda for that meeting and her affidavit.  The agenda for the meeting stated that the “Condemnation Metz Property #06-19-01-1” was to be a topic of discussion.  In her affidavit, defendant stated that she attended the Village of Lyons Board Meeting on June 19, 2001 because one of the items before the Board was the Village’s attempt to purchase or condemn the Metz property.  Defendant stated that she was one of the owners of the Metz property.  

The transcript of the June 19, 2001 board meeting reflects that the meeting was open to the public and televised.  The trustees discussed issues and asked questions of each other throughout the meeting.  The transcript also reveals that audience members frequently interrupted the hearing and the trustees to make comments or ask questions.  On many occasions, the trustees responded directly to these audience members and answered their questions or comments.   The trustees never instructed the audience not to interrupt the proceedings or told them to wait until the end of the hearing to make comments.  At one point, a trustee called on a member of the audience to give a statement and answer questions concerning an issue before the board.  On another occasion, when discussing a variance to a motel, the owner of the motel interrupted the trustees’ discussion to ask if he could respond to the argument.  A trustee responded, “[i]n a minute” and then allowed him to speak at length on the issue.  The trustees asked him questions and continued their discussion.  

The discussion then turned to the Metz property acquisition.  A trustee read the ordinance aloud which stated that the Village of Lyons authorized negotiations and condemnations proceedings for the acquisition of the Metz property.  The ordinance indicated that Kevin Close, Village Manager, was authorized to further negotiate with the owners of the Metz property as to the compensation to acquire the Metz property.  The following colloquy then occurred:

“PRESIDENT VACHATA: Excuse me, Trustee Krueger.  There’s a lot of people that have a lot to lose. 

* * *   

There is not a lot to gain.

TRUSTEE KRUEGER: A lot of people in this Village have a lot to gain, Marie, a lot to gain, and it’s about time.

* * *

TRUSTEE GATZ: * * * It is very important.  We’re talking about people’s lives and income that we’re trying to take away to give the money to the redeveloper to build 600 condominiums * * *.  The condominiums don’t have to be there next year or the year after, so why the rush?

TRUSTEE KRUEGER: You know what, Mr. Gatz, I don’t think it’s a matter of a rush because I’ve lived in this town for 23 years now, and this town has been needing an improvement on Ogden Avenue for almost that amount of time, if not longer.

* * * And there are properties that have been vacant for fifteen years, if not more.  Why?  Because nobody wanted to come to Ogden Avenue because of the way it looked, because of the blighted areas.  * * *

* * *

I’m not in the favor of taking anybody’s property.  I would love to see everybody come through this and be happy.

AUDIENCE MEMBER: Sure you would.  You haven’t tried to work with us.

TRUSTEE KRUEGER: (Addressing audience member) Yes, we have.

* * *

* * *  I know there is [
sic
] going to be good feelings about this and bad feelings about this, but, honestly, * * * I think this is the best thing that can happen to this Village to see some progress, some development done.

PRESIDENT VACHATA: * * *  I drive down Ogden Avenue and I see hard-working people.  * * *  I see businesses that are supposed to be there.

TRUSTEE KRUEGER: What about all the other people that you drive down– the other streets where the other 9,000 people live in this Village?

PRESIDENT VACHATA: What does a townhouse mean to you rather than people that own a business for a hundred years down here?  Do you have any feelings for anybody?

I don’t care if there’s a townhouse there and what goes up here.  These people work hard and you’re taking their business away from them.  You’re walking in there– 

TRUSTEE KRUEGER: Nobody is taking anything.

PRESIDENT VACHATA:  – and they’re taking their business.  That builder does not live in my Village.  I don’t owe him anything.

TRUSTEE KRUEGER: Marie, don’t yell.

         (Applause.)

PRESIDENT VACHATA: * * *  You owe these people here something.  

TRUSTEE KRUEGER: And I hear that.

You know what?  I live here and I pay taxes also. * * *  We are committed to the project, we are committed to making Lyons better.

PRESIDENT VACHATA: You’re committed to a man, one person: [Village manager] Mr. Close.

AUDIENCE MEMBER: How much money is going in your pocket for it?  Don’t tell me–
(footnote: 1)
 TRUSTEE KRUEGER: (Addressing audience member) * * * I hope your apologies are as long as your accusations, because you will be sued.  You will be.

PRESIDENT VACHATA: Hold on, hold on.  There’s no need–

(Inaudible comments from audience)

TRUSTEE KRUEGER: (Addressing audience member) You know what, bring them on, bring them on.  You want to check out this Village, bring anybody you want in.

TRUSTEE GATZ: Trustee, can we try to discipline ourselves?”

In her response to defendant’s motion to dismiss, plaintiff argued that the requirements of the absolute privilege adopted by this court in 
Krueger
 did not apply to immunize defendant’s statement.  The trial court found that defendant’s statement was absolutely privileged and granted defendant’s motion to dismiss plaintiff’s complaint with prejudice.  Plaintiff then filed a motion to reconsider, arguing that the trial court incorrectly interpreted 
Krueger
.  Plaintiff also argued, for the first time, that the trial court improperly relied on the transcript of the board meeting.  After the trial court denied plaintiff’s motion to reconsider, she filed this appeal.

Plaintiff first argues that the trial court erred in relying on an uncertified, unsigned transcript of the Village of Lyons Board Meeting.  She contends that because the court reporter did not attend the meeting and transcribed it from a videotape, she “may not have accurately transcribed what was said and by whom at the meeting,” and thus, the court should not have considered it.  

We find that plaintiff has waived this issue on appeal.  Although defendant attached the transcript to her section 2-619 motion to dismiss, plaintiff never moved to strike this transcript and never objected to it in her response to the motion to dismiss.  Plaintiff first made this argument in her motion to reconsider the trial court’s order granting defendant’s motion to dismiss.  
Because plaintiff raised this argument for the first time in her motion to reconsider, she waived her right to raise this issue on appeal.  
Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo
, ___ Ill. App. 3d ___, ___, 826 N.E.2d 1135, 1148 (2005)
; 
Holzer v. Motorola Lighting, Inc.
,
 295 Ill. App. 3d 963, 978, 693 N.E.2d 446, 457 (1998) (argument raised for the first time in a motion for reconsideration is 
waived
).  Accordingly, plaintiff’s challenge to the transcript is waived.

Plaintiff next argues that the trial court erred in granting defendant’s section 2-619 motion to dismiss.  Specifically, she contends that defendant’s statement is not absolutely privileged because defendant does not fall within any category of the absolute privilege for legislative proceedings adopted by this court in 
Krueger
.  

A 
motion
 to 
dismiss
 under section 
2-619(
a)(9) raises “affirmative matter avoiding the legal effect of or defeating the claim.”  735 ILCS 5/2-619(a)(9) (West 2002). 
 A section 
2-619 motion
 to 
dismiss
 admits 
the legal sufficiency of the complaint and raises other defects or defenses that defeat the claim.  
Estate of Heanue ex rel. Heanue v. Edgcomb
, 355 Ill. App. 3d 645, 647, 823 N.E.2d 1123, 1127 (2005).  
Our review 
is 
de novo
.  
LaSalle Bank National Ass’n v. Village of Bull Valley
, 355 Ill. App. 3d 629, 635, 826 N.E.2d 449, 455 (2005).  

In 
Krueger
, this court explained that the “defense of privilege rests upon the idea ‘that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff’s reputation.’ ”  
Krueger
, 342 Ill. App. 3d at 473, 794 N.E.2d at 974-75, quoting W. Keeton, Prosser & Keeton on Torts §114, at 815 (5th ed. 1984).  “If the policy interest is of ‘paramount importance, considerations of policy may require that the defendant’s immunity for false statements be absolute, without regard to his purpose or motive, or the reasonableness of his conduct.’ ”  
Krueger
, 342 Ill. App. 3d at 473, 794 N.E.2d at 975, quoting W. Keeton, Prosser & Keeton on Torts §114, at 816 (5th ed. 1984).  Absolute privilege provides complete immunity from civil action because public policy favors the free and unhindered flow of information.  
Bushell v. Caterpillar, Inc.
, 291 Ill. App. 3d 559, 561, 683 N.E.2d 1286, 1287 (1997).  See also 
Larson v. Doner
, 32 Ill. App. 2d 471, 473, 178 N.E.2d 399, 400 (1961) (“[c]ommunications absolutely privileged are those so much to the public interest that the informer should speak out his mind fully and fearlessly so that all actions in respect of words thus spoken are absolutely forbidden.”).   The classification of absolutely privileged communication is necessarily narrow.  
Krueger
, 342 Ill. App. 3d at 473, 794 N.E.2d at 975.

In the context of legislative proceedings, we adopted the absolute privilege as stated in section 590A of the Restatement in 
Krueger
.  That section provides, “[a] witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding.”  Restatement (Second) of Torts §590A, at 254 (1977).  

Public policy supports the application of this absolute privilege to this case.  First, we recognize a conflict between two competing interests equally regarded in the law: the right of an individual to enjoy his reputation free from defamatory attacks, and the necessity in the public interest of a free and full disclosure of facts in the operation of the government.  
Vultaggio v. Yasko
, 215 Wis. 2d 326, 332, 572 N.W.2d 450, 453 (1998).  However, after balancing these interests, we find that 
the strong public policy of encouraging full and open citizen participation in legislative proceedings outweighs such an individual’s interest in his reputation.  The adoption and application of the absolute privilege in legislative proceedings allows for open and frank discussion of the issues which are the subject of the proceedings.  
North Coast Cable Limited Partnership v. Hanneman
, 98 Ohio App. 3d 434, 439, 648 N.E.2d 875, 878 (1994).  Moreover, absolute privilege in this context ensures that decision makers will be more fully informed to enact suitable legislation.  See 
Yip v. Pagano
, 606 F. Supp. 1566, 1571 (D.C. N.J. 1985), 
aff’d
, 782 F.2d 1033 (3d Cir. 1986) (adopting section 590A of the Restatement).  This privilege eliminates the chilling effect of defamation suits by ensuring that citizens will be allowed to speak freely and without fear that their participation in this democratic process will result in a lawsuit.  See 50 Am. Jur. 2d 
Libel and Slander
 §275 (1995).  “Citizen participation in legislative proceedings is absolutely vital to ensure a fully-informed and representative legislature.”  
Riddle v. Perry
, 40 P.3d 1128, 1132 (Utah 2002) (adopting section 590A of the Restatement).  Finally, absolute privilege encourages the free expression of ideas as part of the political process. 

Additionally, the requirement that the alleged defamatory statement have “some relation” to the proceeding necessarily limits the application of the absolute privilege and counters the potential for abuse.  See 
Yip
, 606 F. Supp. at 1571-72
.  Such a requirement does not allow witnesses to publish any defamatory statements, but only those related to the issues before the legislative body.  See 
Riddle
, 40 P.3d at 1132-33.  Statements that have no relation to the issues under discussion will not receive the benefit of the absolute privilege, thus protecting the allegedly defamed individuals.  Therefore, because of the need to encourage citizen participation and to allow unrestrained testimony in legislative proceedings, we hold that individuals acting as legislative witnesses enjoy an absolute privilege against defamation for their statements.  See 
Riddle
, 40 P.3d at 1132.  

Plaintiff contends that defendant was not a “witness” at the legislative hearing and, thus, her statement does not fall within this absolute privilege.  She argues that this court in 
Krueger
 “understood the term ‘witness’ to be someone testifying under oath at the legislative proceeding.”  Because there is no evidence that defendant was testifying under oath in this case, plaintiff asserts, her statement is not privileged.  

First, plaintiff misconstrues 
Krueger
.  In that case, we never stated or implied that a person had to be under oath in order to qualify as a “witness” under the absolute privilege for legislative proceedings.  Further, the Restatement provides that a witness does not have to be under oath.  Comment 
a
 to section 590A explains that the absolute privilege for witnesses in legislative proceedings is similar in all respects to that of witnesses in judicial proceedings, as stated in section 588.  It also states that the Comments to section 588 are applicable to section 590A “so far as they are pertinent.”  Restatement (Second) of Torts §590A, Comment 
a,
 at 254 (1977).  Comment 
b
 to section 588 provides that the absolute privilege protects a witness while testifying, but “[i]t is not necessary that he give his testimony under oath; it is enough that he is permitted to testify.”  Restatement (Second) of Torts §588, Comment 
b
, at 250 (1977).  Accordingly, we reject plaintiff’s argument that a witness must be under oath to qualify for this privilege.

Plaintiff also argues that a person must be subpoenaed to appear at the meeting or that her statements must be in response to direct questions from the board in order to be considered a “witness.”  We reject this limitation on the term “witness.”  As discussed above, a witness does not have to be under oath at the hearing for her statements to qualify for this privilege.  Additionally, the Restatement does not place such restrictions on the privilege.  
Riddle
, 40 P.3d at 1133.  Comment 
c
 of section 588 specifically provides that “the fact that the testimony is offered voluntarily and not in response to a question [does not] prevent it from being privileged if it has some reference to the subject of the litigation.”  Restatement (Second) of Torts §588, Comment 
c
, at 251 (1977).  The privilege attaches regardless 
of whether the material is solicited or subpoenaed and regardless of whether it is given under oath.  
See 
DeSantis v. Employees Passaic County Welfare Ass’n
, 237 N.J. Super. 550, 554, 568 A.2d 565, 567 (1990) (adopting and interpreting section 590A of the Restatement).   See also 
Yip
, 606 F. Supp. at 1571 (“it is not necessary that a witness be subpoenaed in order to receive the protection of the privilege” and it is “irrelevant” that a defendant’s statement was not made in response to a specific question).  Therefore, plaintiff’s argument fails.  Accordingly, we find that defendant, based on the specific facts of this case that she was an audience member at a televised meeting of the Village of Lyons board of trustees which was open to the public and where the trustees accepted and invited testimony from the audience, was a witness testifying at a legislative proceeding. 

We next consider whether defendant’s comment was sufficiently related to the legislative proceeding such that the absolute privilege applies.  As discussed above, defamatory testimony is privileged only if it has “some relation” to the legislative proceeding at which the statement is made.  The requirement that statements made in judicial proceedings, or in this case, legislative proceedings, be pertinent or relevant is not strictly applied and must be broadly interpreted.  
Hartlep v. Torres
, 324 Ill. App. 3d 817, 819, 756 N.E.2d 371, 373 (2001); 
Malevitis v. Friedman
, 323 Ill. App. 3d 1129, 1131, 753 N.E.2d 404, 407 (2001).  See also 
Riddle
, 40 P.3d at 1134.  All doubts should be resolved in favor of a finding of pertinency.  
Malevitis
, 323 Ill. App. 3d at 1131, 753 N.E.2d at 407.  Statements will not fall within the absolute privilege only when it “appear[s] that the statements are so irrelevant to the subject matter of the investigation that no reasonable man can doubt their irrelevancy and impropriety.”  50 Am. Jur. 2d 
Libel and Slander
 §296, at 589 (1995).  Additionally, a witness’ testimony is relevant and absolutely privileged “if it has some relation to the proceeding in which he or she is testifying[;] * * * it is actionable only if it is palpably irrelevant.”  50 Am. Jur. 2d Libel and Slander §312, at 615 (1995). 

Applying these principles to the present case, we find the statement made by defendant was sufficiently related to the legislative proceeding to qualify it for an absolute privilege.  The meeting agenda and the transcript show that the trustees were discussing the condemnation of the Metz property at the time defendant made her statement.  The record reveals that many people, including some of the trustees and the Village President, opposed the condemnation of this property while plaintiff was adamantly in favor of it.  The record reflects a heated debate on this subject among the trustees with several comments interjected from audience members.  The trustees allowed and entertained comments from the audience, and in fact, plaintiff directly responded to one comment from an audience member shortly before defendant made her remark.  Before defendant’s statement, President Vachata challenged plaintiff and accused her of being committed “to a man, one person: [Village manager] Mr. Close.”  Defendant then made her statement 
asking how much money plaintiff received in exchange for her support of this project.  Based on these facts, we find that her statement was sufficiently related to the subject of the meeting.  

Accordingly, we find that defendant’s statement at the Village of Lyons Board Meeting was absolutely privileged.  Thus, we affirm the trial court’s order granting defendant’s section 2-619 motion to dismiss plaintiff’s complaint.  

Affirmed.

QUINN, J., concurs. 

GREIMAN, J., specially concurs.

JUSTICE GREIMAN, specially concurring:

I concur with the majority.  However, such concurrence is based on the very narrow limited facts of this case.  Here, the Board of Trustees of the Village of Lyons conducted a televised meeting which contained an audience crowded with citizens of Lyons.  The trustees spoke among themselves during portions of the meeting, but allowed statements from the audience in general and responded to members of the audience when they raised issues. It was, in essence, a free-for-all meeting.  Nonetheless, that is the format of the meeting which the Village of Lyons determined to conduct.

Generally, legislative meetings are conducted with some sense of order.  Witnesses who wish to testify are often provided forms to indicate such a desire and then are called upon by the presiding officer.  Generally the testimony of such witnesses is absolutely privileged; provided that the statements which are complained of are relevant to the issue at hand.

It must be acknowledged that the privilege extends to statements made while a witness or otherwise within the process of legislative committees
(footnote: 2); municipal finance committees
(footnote: 3);  resolution relating to the suspension of city clerk
(footnote: 4); a congressional subcommittee
(footnote: 5); judicial proceedings
(footnote: 6); proceedings before municipal disciplinary boards relating to fire and police
(footnote: 6); and even to quasi-judicial arbitration proceedings
(footnote: 7).   However, in none of these cases are we able to discern that there was anything other than an orderly process, witnesses being called, a chairman in charge, identified witnesses responding to the process.  

In none of the cases cited by the majority is there any suggestion that without some appropriate process the privilege would be extended.

In the case at bar, while the process was certainly loose and seemingly undisciplined, it nonetheless was a process where citizens were invited to speak and the trustees responded.

The majority properly cites the Restatement (Second) of Torts, which provides "[a] witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding."  Restatement (Second) of Torts, §590A, at 254 (1977).

Particular attention should be paid to the reference in section 590A that the privilege extends to defamatory matters published 
"as part of a legislative proceeding."
 (Emphasis added.) We may ask is a voice from the back of a room "part of a legislative proceeding?"

I do not believe that a citizen, whether well intentioned or not, may rise in the gallery of the Illinois General Assembly and make defamatory statements notwithstanding their relevance to the matter under debate nor do I believe a person in the audience in a legislative or municipal or government or judicial or quasi-judicial proceeding is able to yell out defamatory material beyond the process of the hearing and enjoy the privilege.

Accordingly, the privilege afforded an individual is conditional in that it must be part of a legislative proceeding. Such a limitation on the privilege does not offend the public policy of encouraging citizen participation in legislative proceedings.  While I do not intend to set forth the process necessary to invoke the privilege, it is clear that the testimony may be voluntary or subpoenaed, invited or unsolicited, under oath or without oath, in response to panel members or comments made or thought not necessarily responsive to a question.  What is crucial is that the statement be "part of a legislative proceeding." 
Vultaggio v. Yasko
, 215 Wis. 2d 326, 572 N.W.2d 450 (1998).

In the previous consideration of the case at bar in 
Krueger v. Lewis
, 342 Ill. App. 3d 467 (2003), the court considered the existence of absolute privilege extended to statements to a municipal subcommittee and noted that the statements in several Illinois cases had created conditional privileges and further suggested:

"To so hold would cloak with complete immunity from liability 
any
 person who is motivated by malice toward

a public official and knows the statement to be false,

so long as the statement was made in a room where a legislative meeting was in progress.  This interpretation

is not in accordance with the narrow application of

the absolute privilege." (Emphasis in original.)

Krueger v. Lewis
, 342 Ill. App. 3d 467, 474 (2003).

FOOTNOTES
1:  In her affidavit, defendant admits to making this statement, but no other statement during the hearing.

2:
Riddle v. Perry
, 40 P.3d 1128, Utah (2002).

3:
Joseph v. Collis
, 272 Ill. App. 3d 200 (1995).

4:
Larson v. Doner
, 32 Ill. App. 2d 471 (1961).

5:
Yip v. Pagano
, 606 F. Supp. 1566 D. N.J. (1985).

6:
Malevitis v. Friedman
, 323 Ill. App. 3d 1129 (2001).

6:
Hartlep v. Torres
, 324 Ill. App. 3d 817 (2001).

7:
Bushell v. Caterpillar, Inc.
, 291 Ill. App. 3d 559 (1997).