PRESENT:  All the Justices

ISLE OF WIGHT COUNTY

v.   Record No. 091693

ALAN NOGIEC

                                        OPINION BY
                              JUSTICE LEROY F. MILLETTE, JR.
                                      January 13, 2011

PATRICK SMALL

v.   Record No. 091731

ALAN NOGIEC

          FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                    Thomas S. Shadrick, Judge

     Alan Nogiec, a former director of the Parks and Recreation

Department of Isle of Wight County (County), sued the County

for breach of contract and its assistant administrator, Patrick

Small, for defamation.  A jury found for Nogiec on both claims,

and the County and Small appealed.  We granted review to

consider two questions:  first, whether the evidence on damages

was sufficient to support the jury's verdict on the breach of

contract claim; and second, whether the statements giving rise

to the defamation claim were absolutely privileged because they

were made during a report to a subordinate legislative body,

the County's Board of Supervisors (Board).

                         I.  BACKGROUND

     In March 2007, three months after being placed on

administrative leave, Nogiec decided to retire early from his

position as director of the County's Parks and Recreation Department. At the time of his retirement, he and the County entered into a severance agreement (Agreement). The Agreement provided, among other things, that "Nogiec and the County agree to refrain from making any disparaging comments or statements, whether written or oral, about the other or any member of the County's Board of Supervisors, administrators or employees."

In October 2006, roughly five months before Nogiec's retirement, the County's museum sustained flood damage after heavy rains. On May 24, 2007, Small gave a report on the efforts being undertaken to repair the museum at a televised Board meeting. The following exchange occurred during the course of that report:

> BOARD MEMBER: . . . Did we not know that this was going to flood before?
>
> MR. SMALL: To answer the question directly, yes. The previous Parks & Recreation director had been advised by museum staff on more than one occasion . . .
>
> BOARD MEMBER: Were you ever notified of that?
>
> MR. SMALL: No, sir. Nor was your County Administrator. The information had been suppressed. Memos to the Director of Parks and Recreation go back ten years advising that individual that the museum could and likely would flood. In fact, one of those memos mentions that specifically in the event of a sustained nor'easter, the museum would flood.
>
> BOARD MEMBER: So was that written?
>
> MR. SMALL: Yes, sir.

2

BOARD MEMBER:  And handed to him?

MR. SMALL:  Yes, sir.

BOARD MEMBER:  I'm not a civil engineer but I can look at that and tell there is a serious potential for damage.

MR. SMALL:  The museum staff was aware of that. The Foundation was aware.  And it was brought to the attention of the previous Parks & Recreation director on more than one occasion.

BOARD MEMBER:  The shame of it is the artifacts (inaudible) the cost of money to fix the artifacts involved (inaudible) has to be replaced (inaudible) . . .

MR. SMALL:  It borders on negligence in my opinion.

About a week after the Board meeting, the local newspaper, The Smithfield Times, ran a front-page story on Small's report under the headline "Museum to be closed until 2008, Small accuses Nogiec of 'suppressing' problems."  Among other things, the story reported that Small had told the Board that information on the museum's potential for flooding had been "suppressed" by the previous director of the Parks and Recreation Department and that, in Small's opinion, "it border[ed] on negligence."

In March 2008, Nogiec sued the County for breach of contract and Small for defamation.[1]  Nogiec alleged that Small's

---

[1] Nogiec also sued the County for defamation.  That claim was dismissed, however, when the circuit court sustained the County's demurrer on sovereign immunity grounds.

statements that "[t]he information had been suppressed" and that "[i]t borders on negligence in my opinion" were "malicious and per se defamatory, slanderous and libelous." He alleged, moreover, that they violated the Agreement's nondisparagement clause. He demanded compensatory and punitive damages against the County and Small in the amount of $500,000.

A jury trial commenced in March 2009. At the close of Nogiec's case in chief, the County and Small moved to strike the evidence on several grounds. They argued, among other things, that Nogiec "ha[d] failed to introduce evidence of any damages he . . . suffered as a result of th[e] breach" and that Small's allegedly defamatory statements were absolutely privileged because they were made during "a report to a legislative body." The circuit court denied the motions.

The County and Small then presented their cases. At the close of all evidence, they renewed their motions to strike, which the circuit court again denied. The jury returned a verdict in favor of Nogiec, awarding him $45,000 in compensatory damages on the breach of contract claim, and $50,000 in compensatory damages and $100,000 in punitive damages on the defamation claim. The County and Small then again renewed their motions to strike and moved to set aside the verdict. The circuit court denied the motions and entered

4

judgment in accordance with the jury verdict.  These appeals followed.

## II.  DISCUSSION

### A.  The County's Appeal

The County asserts that the circuit court erred in denying its motions to strike and set aside the verdict because Nogiec failed to prove damages, an essential element of his breach of contract claim.  When considering whether a circuit court erred in declining to strike the evidence or set aside the verdict, we apply the following standard of review:  " 'whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff.' "  Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009) (quoting Bitar v. Rahman, 272 Va. 130, 141, 630 S.E.2d 319, 325-26 (2006)).

Nogiec, as the plaintiff below, had the " 'burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery.' "  SunTrust Bank v. Farrar, 277 Va. 546, 554, 675 S.E.2d 187, 191 (2009) (quoting Shepherd v. Davis, 265 Va. 108, 125, 574 S.E.2d 514, 524 (2003)).  "Damages based on uncertainties, contingencies, or speculation cannot be recovered."  Shepherd, 265 Va. at 125, 675 S.E.2d at 524 (citing Barnes v. Graham Va. Quarries, Inc.,

5

204 Va. 414, 418, 132 S.E.2d 395, 397-98 (1963)). The failure to establish damages with reasonable certainty warrants the dismissal of a breach of contract claim. Sunrise Continuing Care, 277 Va. at 156, 671 S.E.2d at 136 (citing Filak v. George, 267 Va. 612, 619-20, 594 S.E.2d 610, 614-15 (2004)).

The evidence Nogiec presented on the damages that resulted from the County's breach consisted solely of his own testimony. He first testified, over the County's objection, about the "financial ramifications" of his decision to retire early and enter the Agreement. That decision, according to his own calculations, cost Nogiec approximately $154,000 in salary and retirement and health insurance benefits, based on his statutory life expectancy.

Next, Nogiec testified about the significance of the Agreement's nondisparagement clause. He testified that it was important to him because he "spent a lot of time throughout [his] career creating a very positive reputation." Nogiec then testified that after his retirement, he started to look for new employment, submitting a few applications in "the Parks and Recreation field [and] a number of applications and resumes to hotels."

Lastly, Nogiec testified about the negative impact that Small's statements had on his job search. Specifically, he testified that they embarrassed him as well as "damaged [his]

6

reputation considerably in the community." Nogiec further testified that "about 124 people, 125 people" from the community approached him after hearing or reading the statements and inquired: "[W]hat is this? What's this all about? . . . [H]ow could that possibly be?" When asked whether the statements had an effect on his ability to find new employment, Nogiec answered, "I believe [they] did." He also testified that after the statements were made, he continued to look for work for "a short period . . . probably two [months] maybe," but did not "receive any interviews." Because of his lack of success in finding new employment, Nogiec testified that he "felt like [his] only alternative was to create a company . . . so that's why [he] created" his own company.

We agree with the County that Nogiec's evidence on damages was insufficient to support the jury's verdict. The evidence Nogiec presented on the costs of his decision to retire early and enter the Agreement was not relevant to the damages that were caused by the County's breach. As Nogiec conceded at trial, the roughly $154,000 in salary and benefits he forfeited was not damages flowing from the County's breach, but rather his consideration for the Agreement. Thus, because Nogiec sued the County seeking monetary damages for breach of contract, not rescission of the Agreement, the evidence on the costs of his

7

decision to retire early and enter the Agreement cannot support the jury's verdict.

The evidence that Nogiec presented on the embarrassment and humiliation he suffered as a result of the County's breach likewise does not support the jury's verdict. " 'As a general rule,' " we have stated, " 'damages for breach of contracts are limited to the pecuniary loss sustained.' " Sunrise Continuing Care, 277 Va. at 156, 671 S.E.2d at 136 (quoting Kamlar Corp. v. Haley, 224 Va. 699, 705, 299 S.E.2d 514, 517 (1983)). We have also recognized that, " 'absent some tort,' damages for 'humiliation or injury to feelings' are not recoverable in an action for breach of contract." Sea-Land Service, Inc. v. O'Neal, 224 Va. 343, 354, 297 S.E.2d 647, 653 (1982) (quoting D. Dobbs, Handbook on the Law of Remedies § 12.25, at 927 (1973)). We are not alone in this view. In fact, as the United States Court of Appeals for the Fourth Circuit has noted, "[c]ourts have universally rejected claims for damages to reputation in breach of contract actions reasoning that such damages are too speculative and could not reasonably be presumed to have been contemplated by the parties when they formed the contract." Rice v. Community Health Ass'n, 203 F.3d 283, 288 (4th Cir. 2000) (citations omitted).

Nevertheless, Nogiec contends that it was proper for the jury to consider his humiliation and embarrassment in

8

determining the amount of damages that resulted from the County's breach because those were the very types of injuries that the Agreement was meant to guard against with the inclusion of the nondisparagement clause. Indeed, he asserts, the Agreement would have no value to either party if humiliation and embarrassment could not be considered as consequential damages. Nogiec further claims that he can recover for the humiliation and embarrassment caused by the County's breach because there are exceptions to the general rule that tort damages are not recoverable in an action for breach of contract. Those exceptions, he argues, apply where, as here, the nature of the contract is such that it is foreseeable that a breach would likely result in emotional disturbance.

We decline Nogiec's invitation to carve out an exception to the rule that tort damages are not recoverable for breach of contract under the circumstances of this case. The distinction between the damages that are recoverable in contract and tort is made plain by the instructions given to the jury on Nogiec's two claims. On the breach of contract claim, the jury was instructed that, if it found for Nogiec, "he [was] entitled to recover as damages all of the losses he sustained that [were] a direct and natural result of the breach and that he . . . proved by the greater weight of the evidence." There is no

doubt that this instruction contemplates only pecuniary losses. Thus, in order to recover on his breach of contract claim, Nogiec had to establish the actual pecuniary losses that flowed from the County's breach.

By contrast, on the defamation claim, the jury was instructed that, if it found for Nogiec, "injury to [his] personal and business reputation, humiliation, and embarrassment [was to be] presumed" and that its verdict should be for an amount that would fully compensate him for "any loss or injury to his business"; "any insult to him including any pain, embarrassment, humiliation, or mental suffering"; and "any injury to his reputation."  To allow Nogiec to recover damages for humiliation and embarrassment on his breach of contract claim would not only let him recover damages based solely on speculation, see id. at 288, but it would also let him recover the same damages twice — once on a contract theory and once on a tort theory.  We refuse to permit such a recovery.

The only other evidence that Nogiec presented on damages was his belief that Small's statements affected his ability to find new employment and the fact that he was not invited to interview for any position he applied for during the two months that followed Small's report.  The County claims that this evidence does not establish with reasonable certainty the

10

pecuniary losses Nogiec suffered because of its breach. Consequently, it argues, the jury was left to speculate as to the measure of his damages.

Nogiec counters that his testimony on the salary and benefits he received while employed by the County and his lack of success in securing new employment after Small's report "provided ample basis for a jury determination of the monetary value of his job opportunity losses resulting from the disparaging televised remarks." Moreover, he argues, the County's contention that the jury's verdict was based on speculation is without merit because, as we have stated, "[d]amages need not be established with mathematical certainty." Taylor v. Flair Property Assocs., 248 Va. 410, 414, 448 S.E.2d 413, 416 (1994). Indeed, since he "received no job offers," he argues, he could not "calculate or testify to[] the exact value of the income and opportunity losses sustained as a consequence of the [County's] breach."

We agree with the County that Nogiec failed to meet his burden of proving with reasonable certainty the damages that resulted from its breach. Although it is true that Nogiec did not need to establish his damages with "mathematical certainty," he was "required . . . to furnish evidence of sufficient facts to permit the trier of fact to make an intelligent and probable estimate of the damages sustained."

11

Id.  The record reveals that Nogiec presented no evidence on the job opportunities he allegedly lost because of the County's breach.  Rather, he merely testified that he "believe[d]" that Small's statements had an effect on his ability to find new employment and that he received no job interviews during the two months after Small's report.  And while Nogiec did testify as to the salary and benefits he received while employed by the County, he presented no evidence on the salaries and benefits of the jobs he applied for.  As a result, the jury had no way to measure the value of the job opportunities he allegedly lost due to the County's breach.

As we recently reiterated in SunTrust Bank, "[e]stimates of damages based entirely upon . . . assumptions 'are too remote and speculative to permit "an intelligent and probable estimate of damages." ' "  277 Va. at 555, 675 S.E.2d at 191 (2009) (quoting Vasquez v. Mabini, 269 Va. 155, 159, 606 S.E.2d 809, 811 (2005)).  In that case, trust beneficiaries alleged that the trustee had breached its fiduciary duty when it sold trust property appraised at $1.1 million for $350,000.  Id. at 551, 675 S.E.2d at 189.  After a bench trial, the circuit court determined that the trustee had breached its fiduciary duty and awarded damages to the beneficiaries.  Id. at 552-53, 675 S.E.2d at 190.  We reversed, holding that the circuit court erred in awarding the beneficiaries damages because they failed

12

to establish that there was a buyer willing to purchase the property for $1.1 million.  Id. at 556-57, 675 S.E.2d at 192.

Just as the beneficiaries in SunTrust Bank failed to present evidence of a willing buyer, Nogiec failed to present evidence of a willing employer — that is, he failed to show an employer who would have hired or even interviewed him but for Small's statements.  Without such evidence on the job opportunities Nogiec allegedly lost and their value (i.e., salaries and benefits), there was simply no way for the jury to make an "intelligent and probable estimate" of the damages he sustained as a result of the County's breach.  Accordingly, the evidence Nogiec presented on the job opportunities he allegedly lost cannot support the jury's verdict.

Because the evidence Nogiec presented on the damages he sustained was insufficient to support the jury's verdict on his breach of contract claim, we hold that the circuit court erred in denying the County's motions to strike and set aside the verdict on that claim.

### B.  Small's Appeal

Small claims that the circuit court erred in denying his motions to strike and set aside the verdict, since the statements giving rise to Nogiec's defamation claim were absolutely privileged.  This is so, Small maintains, because they were made while he was a witness in a legislative

13

proceeding, the Board meeting.  In response, Nogiec raises two principal arguments.  First, he contends that Small waived absolute privilege by failing to plead it as an affirmative defense in his responsive pleadings.  Second, Nogiec asserts that, even if Small did not waive absolute privilege, it does not apply here because the Board meeting was not a legislative proceeding, and because the statements were unrelated to the issue before the Board — the status of the museum repairs.

In the law of defamation, there are two types of privileges — absolute and qualified.  "[T]he maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false."  Lindeman v. Lesnick, 268 Va. 532, 537, 604 S.E.2d 55, 58 (2004).  "Cases in which absolute privilege appl[ies] are not numerous and they may be divided into three classes, namely:  Proceedings of legislative bodies; judicial proceedings; and communications by military and naval officers."  Story v. Norfolk-Portsmouth Newspapers, Inc., 202 Va. 588, 590, 118 S.E.2d 668, 669 (1961).

"Qualified privilege," on the other hand, "exists in a much larger number of cases."  Id. at 590, 118 S.E.2d at 670 (internal quotation marks omitted).  Indeed, we have stated that

14

> [i]t extends to all communications made bona fide
> upon any subject-matter in which the party
> communicating has an interest, or in reference to
> which he has a duty to a person having a
> corresponding interest or duty; and the privilege
> embraces cases where the duty is not a legal one, but
> where it is of a moral or social character of
> imperfect obligation.

Id. (internal quotation marks omitted). If a communication is entitled to a qualified privilege, then there is no inference of malice arising from its publication, but rather "the onus is cast upon the person claiming to have been defamed to prove the existence of malice." Id. at 590-91, 118 S.E.2d at 670.

In this case, the circuit court held that Small's statements were entitled to a qualified privilege, since "[h]e [was] an administrator of the county who [was] reporting to the Board of Supervisors, the controlling authority for the county." Small submits that this ruling was in error because, as a witness at a legislative proceeding, his statements were entitled to an absolute privilege. Whether an absolute or qualified privilege applies under the circumstances of this case "is a question of law that, like all questions of law, we review de novo." Hancock-Underwood v. Knight, 277 Va. 127, 131, 670 S.E.2d 720, 722 (2009) (citation omitted).

Although we have discussed absolute privilege in the judicial context on numerous occasions, see, e.g., Lindeman, 268 Va. at 538, 604 S.E.2d at 58-59 (declining to extend

15

absolute privilege to mere potential litigation); <u>Elder v. Holland</u>, 208 Va. 15, 22, 155 S.E.2d 369, 374-75 (1967) (holding that a communication made by a witness at a hearing before the Superintendent of the State Police was not entitled to an absolute privilege because the safeguards that surround a judicial proceeding were not present), we have never done so in the legislative context.  Hence, whether a communication made by an assistant county administrator to a member of a county's board of supervisors during a board meeting is absolutely privileged is a question of first impression in this Court.

Small urges us to adopt the Restatement's approach to applying absolute privilege in the legislative context.  Under that approach, "[a] witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding." Restatement (Second) of Torts § 590A (1977).  The Restatement clarifies that legislative proceedings include not only those held by the "highest legislative body of a State," but also those held by "subordinate legislative bodies to which the State has delegated legislative power, such as a city council or county board."  <u>Id.</u> § 590, cmt. c.  It also states that "the absolute privilege of witnesses in legislative hearings and other legislative proceedings is similar in all respects to

16

that of witnesses in judicial proceedings."  Id. § 590A,
cmt. a.

As Small notes, the Restatement's approach to applying
absolute privilege in the legislative context is similar to the
approach we have taken to applying the privilege in the
judicial context.  We have stated that if a "communication is
made in . . . a judicial proceeding, it need only be relevant
and pertinent to the case to be protected by the privilege."
Lindeman, 268 Va. at 537, 604 S.E.2d at 58.  "The reason for
the rule of absolute privilege in judicial proceedings," we
have explained, "is to encourage unrestricted speech in
litigation."  Donohoe Construction Co. v. Mount Vernon Assocs.,
235 Va. 531, 537, 369 S.E.2d 857, 860 (1988) (citing Watt v.
McKelvie, 219 Va. 645, 651, 248 S.E.2d 826, 829 (1978)).  We
have also noted that "[t]he public interest is best served when
individuals who participate in law suits are allowed to conduct
the proceeding with freedom to speak fully on the issues
relating to the controversy."  Id. (quoting Watt, 219 Va. at
651, 248 S.E.2d at 829)).

Just as in judicial proceedings, we think that absolute
privilege in legislative proceedings serves the public
interest.  In particular, it encourages individuals who
participate in such proceedings to speak freely on issues
relating to "the operation of the government."  Krueger v.

17

<u>Lewis</u>, 834 N.E.2d 457, 464 (Ill. Ct. App. 2005). That public interest, however, must be balanced against "the right of an individual to enjoy his reputation free from defamatory attacks." <u>Id.</u> We therefore believe that application of the privilege should be limited to proceedings before a legislative body in which the public interest in free speech outweighs the potential harm to an individual's reputation. In our view, this only occurs when the legislative body is acting in its legislative capacity — i.e., when it is creating legislation — rather than in its supervisory or administrative capacity.

The facts of this case present two central issues. The first is whether absolute privilege should be afforded not only to the General Assembly, but also to subordinate legislative bodies to which it has delegated legislative power, such as boards of supervisors. The second is whether all proceedings before subordinate legislative bodies fall under the umbrella of legislative proceedings to which the attachment of the privilege serves the public interest.

Our resolution of the second issue determines the outcome of this case. The General Assembly has granted certain powers to county boards of supervisors.[2] The broadest of these powers

---

[2] In discussing the powers conferred on the Isle of Wight County Board of Supervisors by the General Assembly, Small and Nogiec cite Code § 15.2-403. That section, however, is not applicable here because the County has the traditional form of

18

is a general police power.  Code § 15.2-1200.  In accordance with that power, a county, through its board of supervisors, "may adopt such measures as it deems expedient to secure and promote the health, safety and general welfare of its inhabitants which are not inconsistent with the general laws of the Commonwealth."  Id.  Not all powers given to boards of supervisors, however, are legislative in nature; some are supervisory or administrative.  Under Code § 15.2-1409, for example, boards of supervisors "may make such investigations relating to its government affairs as it deems necessary." And, pursuant to Code § 15.2-1230, they "may require monthly financial reports from any officer or office of the county."

Assuming, without deciding, that absolute privilege is afforded to subordinate legislative bodies, the creation of legislation is the nexus that supports the application of the privilege.  Absolute privilege therefore does not attach to communications made by participants in proceedings conducted by a board of supervisors that do not concern the creation of legislation.

Absolute privilege is an affirmative defense.  See Chaves v. Johnson, 230 Va. 112, 121, 335 S.E.2d 97, 103 (1985); see

_____

government, not the optional county board form.  Report of the Secretary of the Commonwealth 471, http://www.soc-apps.state. va.us/Bluebook/PDFs/10A_Counties.pdf (last visited Dec. 17, 2010).

19

also Restatement (Second) of Torts § 613(2) ("In an action for defamation the defendant has the burden of proving, when the issue is properly raised, the presence of the circumstances for the existence of a privilege to publish the defamatory communication."). Accordingly, Small bore the burden of establishing that the statements giving rise to Nogiec's defamation claim were absolutely privileged. The record reflects that Small presented no evidence to meet this burden, but rather relied on the evidence produced by Nogiec. That evidence does not demonstrate that the Board was acting in a legislative capacity when Small gave his report. On the contrary, it shows that the Board was acting in a supervisory or administrative capacity. The Board had convened to receive a report on the efforts being undertaken to repair County property (i.e., the museum), not to create legislation. Thus, because the Board was not acting in a legislative capacity when it received Small's report, its meeting was not a legislative proceeding to which the public interest supports the attachment of an absolute privilege. We therefore conclude that Small's statements were not absolutely privileged.

While Small's statements were not entitled to an absolute privilege, they were entitled to a qualified privilege because, as an assistant administrator for the County, Small had a duty to report the status of the museum repairs to the Board. We

believe that under the circumstances of this case, a qualified privilege afforded Small sufficient protection from liability for defamation because the statements, whether compelled or volunteered, were only actionable if Nogiec was able to prove that they were made with malice. Hence, the circuit court properly submitted to the jury the issue of whether the statements were made with malice. Accordingly, we hold that the circuit court did not err in denying Small's motions to strike and set aside the verdict on Nogiec's defamation claim.

Because we conclude that absolute privilege does not apply under the circumstances of this case, we need not address Nogiec's argument that Small waived it by failing to plead it as an affirmative defense in his responsive pleadings.

### III. CONCLUSION

The circuit court erred in denying the County's motions to strike and set aside the verdict on Nogiec's breach of contract claim. We therefore reverse the circuit court's judgment in favor of Nogiec and enter final judgment in favor of the County on that claim. The circuit court, however, did not err in denying Small's motions to strike and set aside the verdict on Nogiec's defamation claim. We therefore affirm the circuit court's judgment in favor of Nogiec on that claim.

Record No. 091693 – <u>Reversed and final judgment.</u>
Record No. 091731 — <u>Affirmed.</u>

21