Present: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Carrico, S.J.

GREGG LINDEMAN

v.  Record No. 040385

JAMES E. LESNICK, M.D.

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
November 5, 2004

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND COUNTY OF JAMES CITY
J. Warren Stephens, Judge

In this defamation case, the sole issue on appeal is whether the trial court erred in failing to strike the evidence on the ground that the defamatory statements were made in the context of an absolute privilege.

BACKGROUND

Upon well-established appellate principles, we view the evidence in the light most favorable to the prevailing party in the trial court, who now is before us armed with a jury verdict approved by the trial court. The Gazette, Inc. v. Harris, 229 Va. 1, 25, 325 S.E.2d 713, 731 (1985). We will recite only those facts pertinent to our resolution of the issue presented.

In October 1997, Gregg Lindeman, a machinist, suffered a work-related injury to his back. Thereafter, Lindeman and his employer entered into a memorandum of agreement for payment of benefits, which was approved by the Virginia Workers' Compensation Commission (the Commission) in an award entered on March 31, 1998. In addition to specified weekly compensation

"during incapacity," the award provided for medical benefits "as long as necessary." The insurance company that administered the employer's self-insured workers' compensation program considered the provision for medical benefits in the award to be "potentially for [Lindeman's] lifetime."

In January 1998, Lindeman was referred to James E. Lesnick, M.D., a neurosurgeon, for treatment regarding Lindeman's work-related injury. Lindeman complained of back and leg pain and, ultimately, Dr. Lesnick performed a spinal fusion surgery on Lindeman. Responding well to the surgery, Lindeman was able to return to work with certain restrictions. However, in July 1999, Lindeman contacted Dr. Lesnick and complained of renewed back and leg pain. Dr. Lesnick ordered a course of physical therapy to which Lindeman responded well. Lindeman returned to see Dr. Lesnick in June 2000 again complaining of back and leg pain. Although Dr. Lesnick discussed possible alternate treatment options with Lindeman at that time and referred him to another specialist, Lindeman became dissatisfied with Dr. Lesnick as his treating physician and stopped seeing him.

At about this same time, Linda Harris, Lindeman's girlfriend, suggested that Lindeman consult with Hallett H. Mathews, M.D., an orthopedic surgeon, regarding his continued complaints of back and leg pain. Later in the summer of 2000, Lindeman contacted his employer and its insurance company and

2

requested that Dr. Mathews be designated as his authorized treating physician in place of Dr. Lesnick. He was advised essentially that, without a referral by Dr. Lesnick, any treatment by Dr. Mathews would be at Lindeman's expense and not covered by the 1998 compensation award.

Lindeman contacted Kevin P. Shea, an attorney, requesting that Shea represent him regarding his continued receipt of benefits under the award. Lindeman indicated to Shea that he was working in a light duty position, but that his employer wanted to return him to a full duty position. Lindeman also advised Shea that he did not feel capable of returning to full duty and that he wanted to have a new physician designated as his treating physician. Lindeman was terminated by his employer on September 7, 2000.

Subsequently, on September 20 and again on October 4, 2000, Dr. Mathews examined Lindeman for the purpose of providing an opinion regarding his future treatment. Harris, who was also a patient of Dr. Mathews, accompanied Lindeman during these examinations and took notes. Memoranda purporting to reflect the couple's impressions of Dr. Mathews' examinations of Lindeman were subsequently prepared and provided by Lindeman to

Shea in the presence of Harris.[1]  These memoranda contained the defamatory statements that became pertinent to the present case.

One of the memoranda contained a statement that Dr. Mathews had said that "Dr. Lesnick was 'about to go under' with his medical practice because he can't get any patients [and] Lesnick was 'undereducated' and . . . didn't have enough training prior to starting to perform this type of fusion [surgery]."  The other memorandum contained statements attributed to Dr. Mathews that "it is 'a crime' for Dr. Lesnick" not to admit the failure of the spinal fusion surgery performed on Lindeman, that "Dr. Lesnick decided to ignore the facts and just send Gregg back to work because [Dr. Lesnick] was instructed to do so" by Lindeman's employer and its insurance company, and that Dr. Lesnick "appear[s] to be 'in the pocket' of employers and Workman's Comp carriers for the purpose of returning employees to work . . . whether or not the patient is physically able to safely resume his work duties."

Apparently through inadvertence, Shea forwarded these memoranda to the insurance company that administered the workers' compensation program of Lindeman's employer.  The

---

[1] Harris would later testify that she did not prepare these memoranda and that Dr. Mathews had not said anything "derogatory" about Dr. Lesnick.

4

insurance company in turn forwarded the memoranda to the employer, which then forwarded them to Dr. Lesnick.

On June 26, 2001, Dr. Lesnick filed a motion for judgment in the Circuit Court of the City of Williamsburg and County of James City (the trial court) against Lindeman, Dr. Mathews, and Shea.[2]  Relevant to the issue raised in this appeal, Dr. Lesnick alleged that he was defamed by Lindeman's communication of the memoranda to Shea.  Dr. Lesnick alleged, among other things, that Lindeman knew that the statements in the memoranda were false or that he lacked reasonable grounds to believe that they were true and that publication of the statements created a substantial danger to Dr. Lesnick's professional reputation. Dr. Lesnick sought compensatory damages in the amount of $2,000,000 and punitive damages of $350,000.

In an amended grounds of defense, Lindeman denied that the delivery of the memoranda to Shea constituted a publication.  He further asserted that "presentation of the memos to his personal attorney who was representing him in matters related to his care and treatment by Dr. Lesnick and his workers' compensation claim are absolutely privileged and therefore no defamation occurred."

---

[2] Shea was dismissed from the lawsuit by nonsuit prior to trial.  The jury ultimately returned a verdict against Dr. Mathews; however, Dr. Mathews did not join in this appeal.

A five-day jury trial commenced in the trial court on October 27, 2003.  At the conclusion of the presentation of Dr. Lesnick's evidence, Lindeman moved to strike the evidence on the ground that the communication between Lindeman and Shea was absolutely privileged and, thus, not actionable as defamation.  Lindeman argued that "absolute judicial privilege" applied to any statement made that is relevant to a judicial or quasi-judicial proceeding, and that Lindeman's communication of the memoranda to Shea was relevant to his ongoing workers' compensation claim.

Dr. Lesnick responded that this privilege does not extend to "any communication ancillary to, introductory to or somehow related to a judicial or quasi-judicial proceeding uttered outside the confines of that proceeding."  Dr. Lesnick further contended that even if the privilege were to apply to relevant communications outside the confines of a judicial or quasi-judicial proceeding, there was no ongoing proceeding in this case because Lindeman's workers' compensation claim had already been resolved and there were no matters pending before the Commission at the time Lindeman gave the memoranda to Shea.  The trial court overruled Lindeman's motion to strike.

At the conclusion of the presentation of all the evidence, Lindeman renewed his motion to strike, and the trial court again overruled it.  The case was submitted to the jury, which

returned verdicts for Dr. Lesnick against Lindeman and Dr. Mathews for $350,000 in compensatory damages, and punitive damages against Lindeman and Dr. Mathews of $25,000 and $50,000 respectively.[3]  In a final order dated November 21, 2003, the trial court denied motions to set aside filed by Lindeman and Dr. Mathews and confirmed the jury's verdicts.  This appeal followed.

                            DISCUSSION

     Well-established principles guide our initial consideration of the issue presented in this appeal concerning absolute privilege to publish defamatory statements.  As the designation of the rule suggests, the maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false.  Spencer v. Looney, 116 Va. 767, 774, 82 S.E. 745, 747 (1914).  Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body.  Penick v. Ratcliffe, 149 Va. 618, 628, 140 S.E. 664, 667

---

[3] The jury was instructed that Lindeman's communication of the defamatory statements at issue was subject to a qualified privilege that could be lost by proof of malice.  Qualified privilege is not an issue in this appeal.

7

(1927).  If the communication is made in such a judicial proceeding, it need only be relevant and pertinent to the case to be protected by the privilege.  Donohoe Construction Co. v. Mount Vernon Assocs., 235 Va. 531, 539, 369 S.E.2d 857, 861 (1988).  "The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation."  Id. at 537, 369 S.E.2d at 860.  In addition, absolute privilege is extended to statements made in the course of judicial proceedings because of the safeguards that exist in such proceedings, including liability for perjury and the applicability of the rules of evidence.  Lockheed Information Management Systems Co. v. Maximus, Inc., 259 Va. 92, 101, 524 S.E.2d 420, 424-25 (2000).

Applying these principles in prior cases, as Lindeman correctly notes, we have extended the application of the absolute privilege well beyond the actual courtroom.  See, e.g., Donohoe, 235 Va. at 539, 369 S.E.2d at 861-62 (statements contained in memorandum filed in connection with enforcement of mechanic's lien); Watt v. McKelvie, 219 Va. 645, 651, 248 S.E.2d 826, 829 (1978) (privilege protected third party whose statements are republished by another during a deposition).  We are also of opinion that certain proceedings before the Commission involve a quasi-judicial body contemplated by the privilege because the Commission, upon receipt of evidence

8

submitted under penalty of perjury, resolves facts and legal disputes falling within its statutory authority between parties who seek to have their disputes over workers' compensation issues resolved by that body.

In the present case, Lindeman attributes great significance to the undisputed fact that the defamatory statements regarding Dr. Lesnick were made by Lindeman to his attorney. He does so in further support of his contention that he had engaged this attorney to represent him with regard to his desire to have Dr. Mathews designated as his authorized treating physician in place of Dr. Lesnick. The thrust of Lindeman's contentions is that he was protected by the absolute privilege because under the 1998 compensation award Lindeman was entitled to medical benefits "as long as necessary" and, therefore, a legal proceeding was pending continuously before the Commission. We disagree.

To accept Lindeman's assertions would require this Court to extend the absolute privilege to mere potential litigation. We decline to do so. The logical extension of Lindeman's contentions would effectively erode the absolute privilege to permit defamatory communications to be made with impunity merely upon an assertion that litigation might be subsequently initiated.

When Lindeman gave the memoranda to Shea, no claim had been filed with or was pending before the Commission. The fact that

the Commission had entered an ongoing award for medical benefits does not constitute a pending proceeding as contemplated by the absolute privilege rule. Moreover, it is self-evident that at that time none of the protections of a judicial proceeding existed. Lindeman was accorded the right to assert a qualified privilege by the trial court because of the attorney-client relationship that existed, but he was not entitled to assert an absolute privilege under the circumstances of this case. Accordingly, we hold that the trial court did not err in refusing to strike Dr. Lesnick's evidence against Lindeman.

CONCLUSION

For these reasons, we will affirm the judgment of the trial court in favor of Dr. Lesnick.

Affirmed.