# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Michael L. Donner, Sr.

v.

Arthur Rubin

December 2, 2008

Case No. (Civil) CL08-1410

BY JUDGE V. THOMAS FOREHAND, JR.

This matter is before the Court on defendant's demurrer, filed on August 28, 2008, to all ten counts of the Complaint. The Court heard arguments of counsel on October 8, 2008, and has also considered the briefs filed by counsel in this matter.

*Facts*

This matter arises from a letter sent via e-mail from the defendant to the plaintiff on June 19, 2007, concerning child support litigation in the Virginia Beach Juvenile and Domestic Relations District Court. In that litigation, plaintiff, an attorney, represented the petitioner James Long; Mr. Long's ex-wife, Faith Long, was the respondent and was represented by Attorney Alex T. Mayo, Jr. The defendant in the instant matter, Mr. Rubin, is Faith Long's father. James Long and Faith Long were divorced by final decree entered March 8, 2004, by the Virginia Beach Circuit Court; subsequent to the divorce, child support issues were taken up by the Virginia Beach Juvenile and Domestic Relations District Court.

The letter sent by defendant to the plaintiff was a Microsoft Word document entitled "Jim and Donner.doc" attached to an e-mail received by

plaintiff at his work e-mail account; the e-mail was also sent to James Long, Faith Long, and Attorney Mayo. The e-mail and letter were filed with the Complaint as Exhibits A and B respectively.

Plaintiff's Complaint alleges ten counts based on four parts of the letter, as follows.

*Count I (Defamation Per Se);*
*Count II (Defamation);*
*and Count VII (Punitive Damages)*

Plaintiff alleges that defendant's following statement in the letter was both defamatory and defamatory *per se* because it is a reasonable implication from the language that plaintiff is guilty of unethical and unprofessional conduct and suggests that plaintiff could be subjected to disciplinary proceedings by the State Bar, and that it has hurt plaintiff's standing and reputation in the legal community and the community at large:

> Jim, to the best of my knowledge neither you nor Mr. Donner offered the information that you received an increase in salary which subsequently changed the calculations for child support, as set forth by the Commonwealth. If Mr. Mayo had not requested this information from Mr. Donner, you would have benefited from an unsupported reduction in child support. I cannot help but wonder if this action was furtive and would be considered as a deceptive act before the court. Perhaps the only way we will know is by asking the bar to determine if this matter is worth investigating. Jim, it was my understanding in previous years it was not an anomaly for you to receive your annual increases around the first of the year. Was this an adroit act on your part or should I believe it was a mere coincidence?
>
> Rule 4.1(b) fail to disclose a fact when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.
>
> Misrepresentations can also occur by failure to act or by knowingly failing to correct false statements made by the lawyer's client or someone acting on behalf of the client.

(Compl. Ex. B.) Plaintiff further asserts in Count VII that he is entitled to punitive damages because the statement was made by the defendant, knowing it was false or with reckless disregard for the truth.

*Count III (Defamation Per Se);*
*Count IV (Defamation);*
*and Count VIII (Punitive Damages)*

Plaintiff alleges that the defendant's following statement in the letter was both defamatory and defamatory *per se* because it is a reasonable implication of the language that defendant is claiming that plaintiff is guilty of unethical and unprofessional conduct for allegedly frivolous actions by submitting to Mr. Mayo a proposed order that contained matters that allegedly were not previously discussed or agreed to or discussed with opposing counsel:

> Recently upon going to court, both attorneys, as well as the clients consented to a lucid understanding of the terms of an agreement prior to going before a Judge; yet, after that matter was accomplished the agreement, which Mr. Donner submitted to Mr. Mayo, was rife with matters that were not previously discussed or agreed to. That in turn increased the costs of our legal fees. Were those actions frivolous; that again will be a decision for the Bar. Mr. Mayo, as an astute and reputable attorney was adamant that the so called proposed agreement by Mr. Donner was not what was agreed to.
>
> Rule 3.1. A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of the existing laws.

(Compl. Ex. B.) Plaintiff further claims in Count VIII that he is entitled to punitive damages because the statement was made by the defendant, knowing it was false or with reckless disregard for the truth.

*Count V (Defamation Per Se);*
*Count VI (Defamation);*
*and Count IX (Punitive Damages)*

Plaintiff alleges that the defendant's following statement in the letter was both defamatory and defamatory *per se* because it is a reasonable implication from the language that plaintiff is guilty of unethical and

unprofessional conduct for frivolous actions in insisting that Faith Long had to sign an agreement while his client did not and that defendant suggested that Plaintiff could be subjected to disciplinary proceedings for maintaining a frivolous position not supported in fact or law:

> In addition to that affront, Mr. Donner felt that you did not have to sign the agreement but that Faith should be required to do so. Again, this cost additional legal fees. Was it frivolous or was the argument justified? Within the rules of conduct, does an attorney have a responsibility to the profession as an officer of the court? Is there ever a time when an attorney instructs his client that he will not be party to certain matters and that it would be best to end the relationship? Jim, I would want to know if you are being forthright with your attorney.

(Compl. Ex. B.) Plaintiff further asserts in Count IX that he is entitled to punitive damages because defendant made the statement knowing it to be false or with reckless disregard for the truth.

*Count X ("Insulting Words" Pursuant to Va. Code § 8.01-45)*

Plaintiff asserts that the following language written by defendant constitutes "insulting words that tend toward violence or breach of the peace":

> If I see that your actions towards my daughter and granddaughter progress in the right direction, I may have a proclivity not to ask the Bar to review these matters. I have always felt that it is best for the profession not to pursue differences in this manner if there are other options. However, there are times when certain actions necessitate such remedies, as we just saw in the Duke case. By no means am I accusing Mr. Donner of violating the rules of conduct, but I remain concerned of certain matters. Mr. Donner, I also hope that without compromising your position in representing your client, you will understand my concerns over actions that could possibly exacerbate certain issues. I am not suggesting that you would do anything against the profession; but I assure you that I will ask for a Bar review if the circumstances lead to it.

(Compl. Ex. B.) Plaintiff argues that: (1) by threatening him with a bar complaint unless his and Mr. Long's "actions toward [defendant]'s daughter and granddaughter progress in the right direction"; (2) by a reference to "the Duke case" in which it was "public knowledge that a North Carolina attorney was forced to surrender his license to practice law for ethical violations"; and (3) by "assuring" him that a bar review would be forthcoming, defendant "employed coercion to seek to secure [plaintiff]'s agreement not to prosecute any further child-support-reduction motions before the courts on [Mr. Long]'s behalf." Plaintiff concludes that "such coercion the [defendant] employed in sending [him] the language of Exhibit B quoted in this Count X constitutes extortion." (Compl. ¶ 76–79.)

*Standard of Review*

"A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Supervisors of Spotsylvania County*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Further, a demurrer "admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. A demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Taboada v. Daily Seven, Inc.*, 271 Va. 313, 317, 626 S.E.2d 428, 429 (2006); *Harris v. Kreutzer*, 271 Va. 188, 195, 624 S.E.2d 24, 28 (2006).

To survive a challenge by demurrer, a "pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment'." *Eagle Harbor, L.L.C. v. Isle of Wight County*, 271 Va. 603, 611, 268 S.E.2d 298, 302 (2006) (quoting *Moore v. Jefferson Hospital, Inc.*, 208 Va. 438, 440, 158 S.E.2d 124, 126 (1967)). Rule 1:4(d) of the Rules of the Supreme Court of Virginia states: "Every pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense."

A trial court is "not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [Complaint], but only may determine whether the factual allegations of the [Complaint] are sufficient to state a cause of action." *Harris*, 271 Va. at 195–96, 624 S.E.2d at 24 (quoting *Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427, 528 S.E.2d 99, 103 (2000)). Virginia Code § 8.01-273 states, in part: "All demurrers shall be in writing and shall state specifically the grounds

on which the demurrant concludes that the pleading is insufficient al law. No grounds other than those stated specifically in the demurrer shall be considered by the court."

*Analysis*

*Counts I through IX*

Unlike many states, Virginia makes no distinction between actions for libel and those for slander. *Shupe v. Rose's Stores*, 213 Va. 374, 375–76, 192 S.E.2d 766, 767 (1972). In Virginia, the elements of libel are: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). True statements are not actionable as defamation; to be actionable, the "statement must be not only false, but also defamatory, that is, it must 'tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him'." *Chapin*, 993 F.2d at 1092 (quoting Restatement (Second) of Torts § 559).

At common law, defamatory words that are actionable *per se* are:

> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. (2) Those which impute that a person is infected with some contagious disease, where if the charge is true, it would exclude the party from society. (3) Those which impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. (4) Those which prejudice such person in his or her profession or trade. All other defamatory words which, though not in themselves actionable, occasion a person special damages are actionable.

*Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632 (1981). "Pure expressions of opinion, not amounting to 'fighting words,' are protected by the First Amendment of the Constitution of the United States and Article 1, § 12, of the Constitution of Virginia." *Fuste*, 265 Va. at 132, 575 S.E.2d at 861. Thus:

[S]peech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action. Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion.

*Jordan*, 269 Va. at 575–76, 612 S.E.2d at 206 (quoting *Fuste v. Riverside Healthcare Ass'n, Inc.*, 265 Va. 127, 132–33, 575 S.E.2d 858, 861 (2003)).

[A]ny publication, expressed either by printing or writing, or by signs, pictures, or effigies, or the like, which tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous, is *prima facie* a libel, and implies malice in its publication.

*Moss v. Harwood*, 102 Va. 386, 392, 46 S.E. 385, 387 (1904).

The Court is of the opinion that the instant case is controlled by the Supreme Court's opinion in *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 82 S.E.2d 588 (1954). In *Carwile*, a reporter for the defendant newspaper posed questions to Richmond police officials as to whether they were considering recommending bar charges against the plaintiff, an attorney, based on corruption and bribery charges that were investigated by a grand jury but failed to return an indictment. The defendant published on the front page of its newspaper, the Richmond *Times-Dispatch*, an article containing the statement: "Under the State Code, the State Bar as an administrative agency of the Supreme Court . . . may request a court of competent jurisdiction to disbar an attorney for violation of the ethical code governing the professional conduct of attorneys." *Id.* at 3, 82 S.E.2d at 590–91. The Court opined:

In order to render words defamatory and actionable, it is not necessary that the defamatory charge be in direct terms but it may be made indirectly, and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory. Accordingly, a defamatory charge may be made by inference, implication, or insinuation.

Every false and unauthorized imputation, spoken, written, or printed which imputes to a business or professional man conduct which tends to injure him in his business or profession

is libelous and actionable without allegation or proof of special damages. Hence, words and statements which charge an attorney at law with unethical or unprofessional conduct and which tend to injure or disgrace him in his profession are actionable *per se*.

*Id.* at 7–8, 82 S.E.2d at 592 (internal citations omitted). The Court held that the plaintiff's motion for judgment stated a cause of action because, "[w]hile the defamatory language does not in express terms charge the plaintiff with a breach of his professional honor, yet, when aided by the innuendo, operating within the scope of its legitimate functions, it does impute conduct tending to injure him in his profession." *Id.* at 9, 82 S.E.2d at 592; *see also, Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 636, S.E.2d 447 (2006) (holding that factual statements that damage an attorney's standing to engage in his or her chosen profession and that carry the connotation that he or she lacks the integrity and fitness to practice law are actionable *per se*).

Regarding punitive damages in defamation cases, the Supreme Court has stated: "To recover punitive damages in a defamation case, the plaintiff must prove actual malice by 'clear and convincing evidence that [the defendant] *either* knew the statements he made were false at the time he made them, *or* that he made them with a reckless disregard for their truth'." *Government Micro Res., Inc. v. Jackson*, 271 Va. 29, 42, 624 S.E.2d 63, 70 (2006) (quoting *Ingles v. Dively*, 246 Va. 244, 253, 435 S.E.2d 641, 646 (1993)).

In the instant case, guided by the Supreme Court's holding in *Carwile*, the Court is of the opinion that the statements contained in defendant's letter (Compl. Ex. B) impute conduct tending to injure and prejudice plaintiff in his profession and also allege that defendant made the statements knowing they were false or with reckless disregard for their truth.

The Defendant asserts that he should be entitled to absolute immunity to this action because "the communication was made in relation to a judicial proceeding and in good faith after serious contemplation," or in the alternative, that he should be entitled to qualified immunity "due to the fact that he made the communication in good faith on a subject matter in which he had an interest and a moral and social duty to a person who had a corresponding legal, moral, and social duty." (Demurrer ¶¶ 63–64.) Defendant argues that, although he was not a party to the action in the Virginia Beach Juvenile and Domestic Relations District Court, he was an "interested party" due to his familial relationship.

Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. If the communication is made in such a judicial proceeding, it need only be relevant and pertinent to the case to be protected by the privilege. The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation. In addition, absolute privilege is extended to statements made in the course of judicial proceedings because of the safeguards that exist in such proceedings, including liability for perjury and the applicability of the rules of evidence.

*Lindeman v. Lesnick,* 268 Va. 532, 537, 604 S.E.2d 55, 58 (2004) (internal citations omitted).

The Court in *Lindeman* declined to extend absolute privilege to communications that occurred prior to the commencement of the litigation. *Id.* at 538, 604 S.E.2d at 58 ("To accept Lindeman's assertions would require this Court to extend the absolute privilege to mere potential litigation. We decline to do so. The logical extension of Lindeman's contentions would effectively erode the absolute privilege to permit defamatory communications to be made with impunity merely upon an assertion that litigation might be subsequently initiated."). In the instant case, the allegedly defamatory statements were made *after* the Virginia Beach litigation had ended, as the final order in that matter was entered on May 10, 2007, and not appealed. The Court is of the opinion that just as the absolute privilege does not extend to statements made prior to litigation, it likewise does not extend to statements made after the conclusion of the litigation.

Defendant also claims that his statements are shielded by qualified privilege. "The principle of qualified privilege protects a communication from allegations of defamation if made in good faith, to and by persons who have corresponding duties or interests in the subject of the communication. A plaintiff can overcome the privilege by providing evidence that the statements were made with malice." *Government Micro Res., Inc.,* 271 Va. at 43, 624 S.E.2d at 70. The Court is of the opinion that, given the facts of the instant case, the allegedly defamatory statements in defendant's letter are not shielded by qualified privilege.

As the plaintiff has sufficiently stated causes of action in Counts I through IX and defendant is not shielded by absolute or qualified privilege, the defendant's demurrer to Counts I through IX is, accordingly, overruled.

## Count X

Virginia Code § 8.01-45 creates a statutory civil action for insulting words; it provides: "All words shall be actionable, which from their usual construction and common acceptance, are construed as insults and tend to violence and breach of the peace." The statute's "modern purpose is to avoid verbal confrontations that may lead to violence or other breaches of the peace." *Jarrett v. Goldman*, 67 Va. Cir. 361, 377 (Portsmouth 2005) (citing *Hines v. Gravins*, 136 Va. 313, 320, 112 S.E. 869, 871 (1922)). The Supreme Court, applying the "plain meaning" of Va. Code § 8.01-45 stated that the statute "plainly requires that the words used must not only be insults, but they must also 'tend to violence and breach of the peace'." *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 442, 477 S.E.2d 741, 742 (1996) ("Plaintiff cites no case in which we have said that any assimilation of the statutory cause of action for insulting words by the common law of defamation has eliminated the statutory necessity of showing that the words used were such as to provoke violence or breach of the peace, and we find none."). *See generally, Jarrett*, 67 Va. Cir. at 377–83.

Considering defendant's statements alleged by plaintiff in Count X of the Complaint, the Court is of the opinion that they are not sufficient to make out a cause of action under Va. Code § 8.01-45 as they do not, given their usual construction and common acceptance, tend to violence and breach of the peace. The Court is further of the opinion that no amendment to the Complaint would cure the deficiency; accordingly, defendant's demurrer to Count X is sustained, with prejudice.