## CIRCUIT COURT OF FAIRFAX COUNTY

James M. Mansfield

v.

Lynne Bernabei et al.

April 28, 2011

Case No. (Law) 2009-17663

By Judge R. Terrence Ney

This matter came before the Court on February 11, 2011. After considering the pleadings, memoranda, and arguments of counsel, the Court took the matter under advisement. The following embodies the Court's ruling.

*Procedural History*

On December 11, 2008, Defendant, Michael Ford, sent an unfiled copy of a Complaint and Jury Demand ("Draft Complaint") to prospective defendants named in that Draft Complaint, including Plaintiff, James M. Mansfield. The Complaint ("Complaint") was filed in the U.S. District Court on December 19, 2008.

On December 10, 2009, Mansfield filed a Complaint in this court ("Mansfield Complaint") against Lynne Bernabei, Emily Brittain Read, Bernabei & Wachtel, P.L.L.C. ("Wachtel")[1] and Michael A. Ford (collectively, "Defendants").

The Mansfield Complaint asserted that: (1) Defendants published information with malice, Mansfield Compl. at ¶ 18(2); Defendants published

---

[1] Bernabei and Read were employees, principals, and/or agents of Bernabei & Wachtel, P.L.L.C., at all times relevant hereto. Collectively, Bernabei, Read, and Bernabei & Wachtel, P.L.L.C., were the attorneys at law and agents of Ford at all times relevant hereto.

information with knowledge that it was false or with a reckless disregard of whether such information was true or false, Mansfield Compl. at ¶ 19; (3) Defendants published information for the purpose of discrediting Mansfield in his community and negatively affecting his reputation thereby, Mansfield Compl. at ¶ 20; and (4) Defendants published information for the purpose of discrediting Mansfield in his profession and was *per se* slanderous and libelous. Mansfield Compl. at ¶ 21. Mansfield requested that the court enter judgment against Defendants finding them jointly and severally liable.

On December 21, 2010, Defendants filed this Demurrer.

*Facts*

Ford, a former building manager at Horizon House, a condominium in Arlington, filed a discrimination charge on April 10, 2006, with the U.S. Equal Employment Opportunity Commission ("EEOC") based on unlawful termination. He amended his charge on April 10, 2008.

On August 29, 2008, the EEOC issued a probable cause determination that Ford's employers discriminated against him on the basis of his race, violating Title VII of the Civil Rights Act of 1964.

On December 11, 2008, Ford, through his lawyer Wachtel, sent a Draft Complaint, solely "for settlement purposes," to the potential defendants named in the Draft Complaint, including Mansfield. Mansfield Compl. at ¶ 13. Mansfield represented Horizon House at all times relevant to Ford's filed Complaint. Mansfield was consulted during Ford's hiring process at Horizon House after a background check turned up a pending charge and one previous assault conviction. After Ford was hired, on January 17, 2006, Mansfield wrote a letter labeled "Confidential; Attorney Client Privilege," to members of the Horizon House Board of Directors. Ford alleges that the letter made false and defamatory statements about him. Draft Compl. ¶ 128-130; Compl. at ¶ 53.

The Draft Complaint included four counts:

(1) Race discrimination in violation of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e et seq., against Defendants Zalco, MDV Maintenance, and Horizon House;

(2) Race discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 against Defendants Zalco, MDV Maintenance, and Horizon House;

(3) Intentional interference with contract against Defendants Mansfield, Faison, Mucklow, Smith, and John/Jane Does; and

(4) Defamation (libel and slander) against Defendants Mansfield, Smith, and John/Jane Does.

(Counts 3 and 4 were improperly labeled in the Draft Complaint. For the purposes of this Opinion Letter, they will be listed in chronological order.)

On December 19, 2008, eight days after the distribution of the Draft Complaint, Ford filed a Complaint in the U.S. District Court for the Eastern District of Virginia. The Complaint brought Title VII claims against the corporate defendants and 42 U.S.C. § 1981 claims against the individual defendants, including Mansfield.

Mansfield thereafter filed his Complaint in this court, asserting that statements contained in Ford's Draft Complaint were defamatory. He alleges that he has suffered harm to his reputation as a result.

### Analysis

The issue presented is whether a complaint alleging defamation should be dismissed because of a plaintiff's asserted absolute privilege to publish statements to the prospective defendants in a draft complaint.

### A. Legal Standard for Demurrer

"A demurrer tests the legal sufficiency of a pleading and can be sustained if the pleading, considered in the light more favorable to the plaintiff, fails to state a valid cause of action." The sole question to be decided by the court is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the Defendant. *Thompson v. Skate Am., Inc.*, 261 Va. 121, 540 S.E.2d 123 (2001). On demurrer, the court must admit the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts. *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 410 S.E.2d 652 (1991). A demurrer does not admit the correctness of any conclusions of law. *Ward's Equip., Inc. v. New Holland North America, Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

### B. Defamation and Absolute Privilege

Whether the facts are legally sufficient to state a cause of action is dependent on whether the alleged defamatory statements were privileged or not. If so, no claim lies. If not, the claim may proceed.

In the law of defamation, there are two kinds of privileged communications: absolute and qualified. *Isle of Wight County v. Nogeic*, 281 Va. 140, 152, 704 S.E.2d 83, 88 (2011) (citing *Penick v. Ratcliffe*, 149 Va. 618, 619, 140 S.E. 664 (1927)).

"An absolute[ly] privileged communication is one for which an action will not lie, even though the words are published maliciously and with knowledge of their falsity, whereas a qualified privileged communication is

one which is *prima facie* privileged only, and in which the privilege may be lost by proof of malice in the publication of the libel or slander." *Id.*

The maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false. *Spencer v. Looney*, 116 Va. 767, 774, 82 S.E. 745, 747 (1914). Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. *Penick v. Ratcliffe*, 149 Va. 618, 628, 140 S.E. 664, 667 (1927). If the communication is made in a judicial proceeding, it need only be relevant and pertinent to the case to be protected by the privilege. *Donohoe Construction Co. v. Mount Vernon Assocs.*, 235 Va. 531, 539, 369 S.E.2d 857, 861 (1988).

"The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation." *Id.* at 537, 369 S.E.2d at 860. In addition, absolute privilege is extended to statements made in the course of judicial proceedings because of the safeguards that exist in such proceedings, including liability for perjury and the applicability of the rules of evidence. *Lockheed Information Management Systems Co. v. Maximus, Inc.*, 259 Va. 92, 101, 524 S.E.2d 420, 424-25 (2000).

Absolute privilege applies to three classes of cases: "[p]roceedings of legislative bodies, judicial proceedings, and communications by military and naval officers." *Isle of Wight County*, 281 Va. at 152, 704 S.E.2d at 88 (quoting *Story v. Norfolk-Portsmouth Newspapers, Inc.*, 202 Va. 588, 590, 118 S.E.2d 668, 669 (1961)).

Statements made during a judicial proceeding are absolutely privileged if they are "material and relevant to the proceeding." *Titan America, L.L.C. v. Riverton Inv. Corp.*, 264 Va. 292, 308, 569 S.E.2d 57, 66 (2002) (citing *Donohoe Constr. Co. v. Mount Vernon Associates*, 235 Va. 531, 537, 369 S.E.2d 857 (1988)). The Virginia Supreme Court has not yet extended the absolute privilege to "mere potential litigation." *Lindeman v. Lesnick*, 268 Va. 532, 538, 604 S.E.2d 55, 58 (2004). Nor has it refused to extend it.

## C. *The Restatement (Second) of the Law of Torts*

The *Restatement (Second) of the Law of Torts* provides that an absolute privilege extends to preliminary communications made for the purpose of proposed litigation. *Restatement (Second) of the Law of Torts*, § 586, at 247 (1977).

> § 586. *Attorneys at Law*. An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and

as a part of, a judicial proceeding in which he participates as counsel, if he has some relation to the proceeding.

*Restatement (Second) of the Law of Torts*, § 586, at 247 (1977).

> § 587. *Parties to Judicial Proceedings.* A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

*Restatement (Second) of the Law of Torts*, § 587, at 249 (1977).

The commentary to the *Restatement* explains the scope of absolute privilege:

> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

*Restatement (Second) of the Law of Torts*, § 586, cmt. e, at 248; § 587, cmt. e, at 250 (1977).

Here, the Draft Complaint advised likely defendants of the potential action against them. The use of the language "for settlement purposes only" does not indicate that there was a lack of good faith or an inadequate degree of consideration. To the contrary, that language means that the particular document itself, namely, the Draft Complaint, may not be used in judicial proceedings. This, however, does not eliminate or diminish the likelihood of future proceedings. To the contrary, it suggests that there will be a lawsuit. The creation of the Draft Complaint was a preliminary communication leading to the official judicial action eight days later.

D. *The Long Test: Applying the Restatement*

In *Long v. Old Point Bank of Phoebus*, the defendants asserted that defamatory statements made in communications prior to the commencement of litigation were absolutely privileged. *Long v. Old Point Bank of Phoebus*, 41 Va. Cir. 409 (Norfolk 1997). The Norfolk Circuit Court

held that "an absolute privilege exists not only with respect to statements made in the course of a *pending* judicial proceeding but also with respect to communications relevant to *proposed* judicial proceeding." *Id.* at 413 (citing *Harris v. NCNB Nat'l Bank of North Carolina*, 355 S.E.2d 838, 842 (N.C. App. 1987)).

The court established a two-part test ("*Long* Test") based explicitly on *Restatement* § 586, cmt. e. and § 587 cmt. e. in determining whether the absolute privilege should apply to communications made prior to formal legal process:

> First, the occasion of the communication must be examined to determine if the statement was made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding." Second, a court must evaluate the content of the statement to determine if it "has some relation to a proceeding that is contemplated in good faith and under serious consideration."

*Id.* at 414 (quoting *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir. 1990)).

The first prong in that case was satisfied when two allegedly defamatory letters were sent two and three months prior to the initiation of legal process. *Id.* The court held that "[i]t [was] clear that the letter was sent preliminarily to a proposed judicial proceeding that was contemplated in good faith and under serious consideration." *Id.* at 415.

Here, the statements about Mansfield were published in the Draft Complaint on December 11, 2008, just eight days prior to the filing of Ford's Complaint. This is certainly within the two and three months time period afforded by the *Long* court, as well as "preliminary to a judicial proceeding" as provided in the Restatement.

E. *Comparison: Draft Complaint vs. Complaint*

The second prong of the *Long* Test is whether the content of the statements directly related to the contemplated judicial proceeding.

The Counts of the two Complaints contain the majority of any differences. In the Draft Complaint the Counts were labeled:

> Count I: Race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against Defendants Zalco, MDV Maintenance, and Horizon House.

Draft Compl. at p. 18.

> Count II: Race discrimination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 against Defendants Zalco, MDV Maintenance, and Horizon House.

Draft Compl. at p. 20.

> Count IV:[2] Intentional interference with contract against Defendants Mansfield, Faison, Mucklow, Smith, and John/Jane Does.

Draft Compl. at p. 22.

> Count V: Defamation (libel and slander) against Defendants Mansfield, Smith, and John/Jane Does.

Draft Compl. at p. 25.

The filed Complaint, though, labeled the Counts as follows:

> Count I: Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., Against Defendants Zalco, MDV Maintenance, and Horizon House.

Compl. at p. 17.

> Count II: Race Discrimination in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 Against Defendants Zalco, MDV Maintenance, Horizon House, Mansfield, Mucklow, Faison, and Smith.

Compl. at p. 19.

Notwithstanding the reduction in the number of Counts, the content of the two complaints remains substantially similar. Counts IV and V were altered primarily because Defendants John/Jane Does were eliminated between the time the Draft Complaint was circulated and the filing of the Complaint.

According to *Long*, it is appropriate to provide preliminary communication to those individuals with a legitimate interest in the matter. *See Long v. Old Point Bank of Phoebus*, 41 Va. Cir. 409, 414-15 (Norfolk 1997). Although Defendants John/Jane Does were removed from the action prior to the Complaint being filed, it was appropriate to provide in the

---

[2] The Counts were mislabeled in the Draft Complaint, jumping from Count II to Count IV.

Draft Complaint references to John/Jane Does because at that time such "persons" possessed a legitimate interest in the matter.

The restructuring and editing of the Draft Complaint prior to filing the official Complaint further contributed to the reduction of the overall counts. While Counts IV and V of the Draft Complaint were removed from the Complaint, the substance of those Counts remained within the filed Complaint.

Draft Complaint paragraphs 128-31, 135-40, described specifically by Mansfield in his December 10, 2009, Complaint as "contain[ing] false or misleading information, namely, describing Mansfield as an unethical lawyer and racist," Mansfield Compl. at ¶ 14, are incorporated into paragraphs 53, 58, 59, 61, 62, 67, 118, and 119 of the filed Complaint.

In short, a substantially different document was not created by the editing of the Draft Complaint. Indeed, as to its substance, it was virtually identical.

## F. *The Lindeman Analysis and Its Impact on Attorney-Client Relationships*

In *Lindeman*, defamatory remarks were made by a patient to his attorney regarding the patient's former physician. *Lindeman v. Lesnick*, 268 Va. 532, 535, 604 S.E.2d 55, 56-57 (2004). They were then repeated by the lawyer publicly, namely, to the doctor's insurance company. The fact that these statements were shared with and communicated by the patient's attorney was not enough to afford an absolute privilege. There was no draft complaint for a judicial proceeding but merely an assertion that litigation might be "subsequently initiated." *Id.*

Based upon these facts, the *Lindeman* court declined to extend the absolute privilege to mere potential litigation. Such a result is understandable. The insurance company was not a named or potential defendant. It was the doctor's insurer." Statements made to it were surely without any protection.

Additionally, there was no "subsequent case" present in *Lindeman*. A threat of "might be" litigation to a non-potential defendant is far different from a draft complaint setting out the claim to an intended defendant.

Here, a detailed Draft Complaint was written and distributed to the persons named and subsequently sued. The Complaint was filed within eight days of the distribution. The filed Complaint was substantially similar to the Draft Complaint.

"The public interest is best served when individuals who participate in law suits are allowed to conduct the proceeding with freedom to speak fully on the issues relating to the controversy." *Watt v. McKelvie*, 219 Va. 645, 651, 248 S.E.2d 826, 829 (1978). The court gave a justification favoring the application of absolute privilege:

The reason for the absolute privilege accorded defamatory communications made in the course of judicial proceedings is one of public policy, the underlying rationale being that such a privilege is necessary to the proper administration of justice; if the judicial process is to function effectively, those who participate must be able to do so without being hampered by the fear of private suits for defamation. Furthermore, it has been said that the public interest in the freedom of expression by participants in judicial proceedings, uninhibited by risk from resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy where he or she has been wronged thereby.

50 Am. Jur. 2d, *Libel and Slander*, 299, at 591 (1995). "[T]he maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false." *Isle of Wight County v. Nogeic*, 281 Va. 140, 152, 704 S.E.2d 83, 88 (2011) (quoting *Lindeman v. Lesnick*, 268 Va. 532, 537 604 S.E.2d 55, 58 (2004)).

By disallowing the privilege, a client may fail to fully communicate important information to his or her lawyer, which reduces the lawyer's ability to properly advocate the client's case. As a result, a lawyer may not be able to fully communicate such information to the adverse party, information vital to the potential resolution of a claim.

Here, it was necessary that Ford be forthcoming with his lawyers in order for them to have a complete understanding of the situation. Sharing this information with the Defendants through a Draft Complaint should also enjoy such a protection, and with good reason. Everything in dispute is fully set out, and a potential defendant can fairly judge the risks and rewards of a resolution without litigation. Without such protection, settlement discussions may be stifled at the outset. Courts encourage efficient and economical settlement of disputes. To not protect the settlement discussions would thwart this salutary goal.

The court in *Lindeman* did not directly address whether absolute privilege applies to preliminary communications made for the purpose of plainly proposed litigation. *See Lindeman v. Lesnick*, 268 Va. 532, 604 S.E.2d 55. In *Isle of Wight*, decided after *Lindeman*, though the specific point was not addressed, the privilege itself was viewed both broadly and absolute. *See Isle of Wight*, 281 Va. 140, 704 S.E.2d 83. The *Isle of Wight* decision coupled with the guidance of the Restatement and underscored by the reasons for the existence of privilege, namely, resolution of disputes,

makes clear that the Draft Complaint here should be afforded absolute privilege.

## Conclusion

The Court finds that the Draft Complaint is sufficiently similar to the Complaint filed. It was prepared in anticipation of litigation. It was published only to the potential defendants. Suit was filed eight days later. For these reasons, the content of the Draft Complaint should enjoy the protection of absolute privilege. Defendants' Demurrer is sustained.